## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DR. TANGUY CHAU,

          Plaintiff,                            Case No.

v.                                            Hon.

NICOLAS BERARDI, an individual,
ANIMO VENTURES LLC,
f/k/a MAGNETICO VENTURES LLC, f/k/a BANANA VENTURES LLC,
a Delaware limited liability company, and
DOES 1 THROUGH 10, inclusive,

          Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dr. Tanguy Chau ("Dr. Chau" or "Plaintiff"), by and through undersigned counsel, by way of Complaint against the Defendants, Nicolas Berardi ("Berardi"), Animo Ventures LLC ("Animo" or the "Fund"), and DOES 1-10 (collectively, "Defendants"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Dr. Chau is an individual residing in and domiciled in the State of Hawaii.

2.      During the entire term of Dr. Chau's employment with Defendants, Dr. Chau resided in and was domiciled in the State of California.

3.      Upon information and belief, Defendant Berardi is an individual residing in Miami, Florida, and is therefore within the jurisdiction of this Court.

4.      Upon information and belief, Defendant Animo is a Delaware limited liability company with its principal place of business in Miami, Florida, and is therefore within the jurisdiction of this Court.

5.      Upon information and belief, Defendants Does 1 through 10 are parents, subsidiaries, shareholders, managers, members, directors, officers, employees, representatives, and/or agents of Defendants who participated and/or are currently participating in the unlawful conduct at issue herein.  The true identities of Does 1 through 10 are unknown to Dr. Chau, who will amend this Complaint to state such names when they become known through discovery and/or continued investigation.

6.      This Court has personal jurisdiction over Defendants because they reside in and/or are otherwise domiciled in the Southern District of Florida.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Dr. Chau and all of the Defendants, and the amount in controversy exceeds $75,000.

8.      Further, this action arises, in part, from written contracts between Dr. Chau and Animo and/or Berardi, which include choice of venue provisions. These provisions provide that all lawsuits relating to the contracts, among the parties to the contracts, may be brought in this Court. Venue is thus proper in Court.

9.      This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a) as to the claims not relating to written contracts between the parties because said claims are substantially related to the contract claims in this action that they form part of the same case or controversy.

## **FACTUAL ALLEGATIONS**

**A.      The Parties' Relationship.**

1.      In 2017 and 2018, Berardi caused the Fund to be organized under the name Banana Ventures LLC.

2.      Upon information and belief, the Fund's entire investment capital was provided by Paolo Rocca ("Rocca"), a citizen and resident of Argentina.

3.      Dr. Chau is an experienced venture capitalist and entrepreneur, a Kauffman Fellow,[1] a graduate of MIT's Engineering Ph.D. Program, the Sloan School of Management, and a member of MIT's Board of Trustees. He holds an Investment Advisory Law License with FINRA and he has worked at a number of high profile venture capital funds in Silicon Valley and elsewhere, and was an early investor (both personally and on behalf of venture funds) in a spate of start-up and early stage companies.

4.      In 2018, Berardi approached Dr. Chau to join the Fund.

5.      As part of his pitch to Dr. Chau, Berardi promised, including in the presence of third parties, that Dr. Chau would be granted a substantial ownership stake in the Fund as well as a sizeable carry interest in certain distributions as defined in a specified Limited Partnership Agreement; that he would be granted at least equal say in investment decisions; and, in the event of any disagreements concerning investment or strategic matters, that Berardi would work hard and in good faith to resolve such differences and preserve the parties' relationship over time for the long-term benefit of the Fund.

6.      In reliance on Berardi's promises on behalf of the Fund, Dr. Chau agreed to join the Fund in late 2018.  Pending finalization of formal agreements, Dr. Chau traveled the country, promoted Animo to his substantial business network, and closed multiple lucrative investments on behalf benefit the Fund.

7.      Dr. Chau held the positions of Member and Managing Director of Animo.

---

[1] https://www.kauffmanfellows.org/

8.      On or about January 7, 2019, Dr. Chau and Animo/Berardi entered into several written contracts to memorialize their employment and business relationships, including an Executive Agreement, a Management Agreement, and a Letter (or "Carry") Agreement, which provide, *inter alia*, that:

- Dr. Chau would serve as the Company's "Managing Director[.]" His employment in such capacity was not at-will, but rather would continue for at least two years and would automatically renew for consecutive one-year periods absent notice of termination by either party. (**Exhibit 1**, Executive Agreement, ¶ 3);

- Dr. Chau would receive a base salary of at least $220,000 per year, in addition to a signing bonus of $95,000 upon commencement of work. (*Id*. at ¶ 4);

- Dr. Chau would receive membership units representing a 25% ownership interest in the Fund, vesting over a four-year period, and would be admitted as a Member of the Fund. (**Exhibit 2**, Management Agreement, ¶ 1); and

- In recognition of the "substantial benefit" his services had already conferred and would continue to confer upon Animo/Magnetico entities, Dr. Chau would receive 29% of General Partner Distributions, as defined in Magnetico Ventures I, L.P.'s Exempted Limited Partnership Agreement, dated May 18, 2018 ("LPA"). While that stake ordinarily would vest according to a specified schedule, "[i]n the event the Fund terminated Dr. Chau's employment without Due Cause[,]" Dr. Chau's carry interest immediately would fully vest. (**Exhibit 3**, Letter/Carry Agreement).

9.      At all times while serving as Member and Managing Director of Animo, Dr. Chau acted in full and faithful compliance with all of his applicable contractual duties. He also succeeded in these roles by, among other accomplishments, sourcing, performing diligence, and

consummating a number of high-value investments in promising companies, including Syncari, Intello, The Cusp, Yay Lunch, Lev, Shift, Blanket, Prospr, Finalis, and several others.

**B.     Dr. Chau Discovers And Reports To Mr. Berardi Apparent Violations of Law.**

10.    While working for the Fund, Dr. Chau discovered information that caused him significant concern about the Fund's compliance with applicable U.S. law, including its candor with U.S. regulatory and immigration authorities. Chief among these concerns was the Fund's non-compliance with disclosure obligations to the Committee on Foreign Investment in the United States ("CFIUS"), an inter-agency U.S. governmental body tasked with reviewing the implications on national security by foreign investments in certain U.S. businesses.

11.    In particular, all of Animo's investment capital originated from Rocca and the foreign entities affiliated with him. However, Rocca was not an "excepted investor" within the meaning of CFIUS regulations, nor is he from or any of his entities organized under the laws of an "excepted foreign state." Dr. Chau had reason to believe that Animo had indirectly invested some of those foreign funds without complying with CFIUS disclosure regulations.

12.    Animo's failure to comply with CFIUS regulations could have disastrous consequences for the Fund's portfolio companies, the Fund, and Dr. Chau.

13.    Dr. Chau reported these concerns to Berardi and others at the Fund on several occasions, including in April of 2019. Dr. Chau expressed to Berardi his conviction that Animo must disclose to CFIUS the source of the Fund's investment capital. Berardi stated that he would "take care of it," but never did.

14.    Dr. Chau followed up with Berardi regarding disclosure of the Fund's investment capital source to CFIUS on multiple occasions between June and August 2019. Each time, Berardi dismissed Dr. Chau's concerns.

**C.**     **Defendants Retaliate Against Dr. Chau And Engage In Other Wrongful Conduct Causing Injury To Dr. Chau.**

15.     Berardi never took action to address the unlawful activities identified by Dr. Chau.

16.     Following Dr. Chau's reports of unlawful activities being committed by the Fund and Berardi, Berardi and others at the Fund began to campaign of unlawful retaliation against Dr. Chau, ultimately terminating Dr. Chau's employment and denying Dr. Chau his earned and bargained-for compensation.

17.     Berardi prevented Dr. Chau from raising his concerns to the Fund's legal counsel.

18.     Berardi, on behalf of himself and the Fund, and others at the Fund undermined and materially diminished Dr. Chau's authority and responsibilities within the Fund, including, without limitation, by intentionally:

- Excluding Dr. Chau from important meetings and decisions of the sorts in which Dr. Chau previously had participated consistently;

- Removing Dr. Chau's signature block from term sheets and other investment-related papers;

- Disabling and/or restricting Dr. Chau's access to critical Fund accounts and materials, including Google Suite and Affinity, and revoking Dr. Chau's access and signing authority with respect to financial accounts – effectively eliminating Dr. Chau's ability to do his job;

- Revising marketing materials to omit reference to Dr. Chau and Dr. Chau's contributions to the Fund;

- Renaming the company without Dr. Chau's involvement; and

- Informing advisors and contractors, without Dr. Chau's knowledge or agreement, that Dr. Chau would be leaving the Company.

19.     Dr. Chau objected to Berardi's unlawful retaliatory actions and asked Berardi to restore his authority, responsibilities, and access that Berardi had taken away. Berardi refused.

20.     On September 11, 2019, Dr. Chau and Berardi had a discussion to attempt to resolve their disagreements. During this discussion, Berardi stated that he would not restore Dr. Chau's authority, responsibilities, and access at the Fund. Berardi further declared that he intended to end Animo's relationship with Dr. Chau.

21.     On September 11, 2019 or otherwise, Berardi never indicated or expressed a belief that, at any point during Dr. Chau's involvement with the Fund, that Dr. Chau had performed deficiently, that Dr. Chau had exhibited poor performance in duties, or that Dr. Chau had acted in any way that constituted "cause" for termination of Dr. Chau's employment.

22.     Also on September 11, 2019, Dr. Chau, again, wrote to Berardi and objected to Berardi's actions. Dr. Chau again asked Berardi to restore his authority, responsibilities, and access that Berardi had taken away.

23.     That same day, after Dr. Chau sent the correspondence to Berardi, Dr. Chau's Animo email account was shut down. Within a matter of hours, Berardi sent Dr. Chau an email stating that Berardi was terminating Dr. Chau's employment "for cause."  Mr. Berardi cited false and pretextual "violations" by Dr. Chau as his purported grounds for terminating Dr. Chau's employment.

24.     Berardi proceeded to disparage Dr. Chau to third parties, including the Fund's portfolio companies, certain of the Fund's advisors, vendors, contractors, and co-investors, as well as colleagues and mentors from the Kauffman Fellows. For example, Berardi falsely represented to co-investors and leaders of several portfolio companies that Dr. Chau had chosen to leave the

Fund to focus on other projects and would no longer dedicate any time or effort to support them and help grow their companies.

25.     Berardi's disparaging statements are additional acts of retaliation by Defendants and significantly damaged Dr. Chau's relationships with these third parties.

26.     Defendants' unlawful conduct has caused substantial damage to Dr. Chau, including lost salary, equity, increasing carry interest, proportionate share of management fees, and other benefits for which he negotiated and irrefutably would have obtained had Animo honored the two-year employment commitment it made. Those actions have also materially diminished Dr. Chau's reputation, standing, and relationships he built over years of painstaking work and consistent successes.

27.     On September 9. 2020, Dr. Chau and Defendants executed a Confidential Tolling and Mutual Non-Disparagement Agreement ("Tolling Agreement"), which provides in relevant part that "[e]ach of Animo and Mr. Berardi agree that they shall not assert, and expressly waive the right to assert, in response to any Claim or associated remedy any Time Defense that relies in whole or in part on the Tolling Period; provided, however, that nothing herein shall limit any statute of limitations or other time-based defense Animo or Mr. Berardi could have asserted on or before August 27, 2020." (**Exhibit 4**, Tolling Agreement).

**COUNT I**
**BREACH OF CONTRACT – MANAGEMENT AGREEMENT**
**(Against Defendant Animo)**

28.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

29.     As described above, Dr. Chau and the Fund entered into a series of valid and binding agreements, including the Management Agreement (attached hereto as **Exhibit 2**).

30.     Dr. Chau fully performed his obligations under the Management Agreement, and/or his performance of such duties was excused.

31.     The Fund breached its obligations under the Management Agreement by, *inter alia*, withholding Dr. Chau's stake in the Fund and Dr. Chau's share of management fees, as set forth in that contract.

32.     As a result of the Fund's breaches of contract, Dr. Chau has suffered damages, costs, and attorneys' fees in amounts to be proven at trial.

**COUNT II**
**BREACH OF CONTRACT – LETTER/CARRY AGREEMENT**
**(Against Defendant Animo)**

33.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

34.     As described above, Dr. Chau and the Fund entered into the Letter/Carry Agreement (attached hereto as **Exhibit 3**).

35.     Dr. Chau fully performed his obligations under the Letter/Carry Agreement, and/or his performance of such duties was excused.

36.     The Fund breached its obligations under the Letter/Carry Agreement by, *inter alia*, withholding Dr. Chau's carry interest as set forth in that contract.

37.     As a result of the Fund's breaches of contract, Dr. Chau has suffered damages, costs, and attorneys' fees in amounts to be proven at trial.

**COUNT III**
**VIOLATION OF CAL. LABOR CODE § 201**
**(Against All Defendants)**

38.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

39.     Animo, Berardi, and the other Defendants were "employers" of Dr. Chau within meaning of Cal. Labor Code § 201.

40.     Dr. Chau was an "employee" within meaning of Cal. Labor Code § 201.

41.     Dr. Chau was employed by Defendants in the State of California.

42.     The Fund owes Dr. Chau compensation under the terms of Dr. Chau's employment with the Fund, including without limitation, as set forth in the Executive Agreement (attached hereto as **Exhibit 1**), the Management Agreement (attached hereto as **Exhibit 2**), and/or the Letter/Carry Agreement (attached hereto as **Exhibit 3**).

43.     Per Cal. Labor Code § 201, upon terminating Dr. Chau's employment, the Fund was obliged by law to "immediately" "pay at the time of discharge" all wages "due and payable[.]"

44.     The Fund violated this duty. It withheld Dr. Chau's last paycheck and refused to grant him even his vested stake in the Fund, management fees payable to the fund, and his carry interest.

45.     Dr. Chau was harmed as a result of Defendants' conduct, in an amount to be proven at trial.

46.     Animo's conduct was undertaken fraudulently, maliciously, oppressively, and/or in reckless disregard of Dr. Chau's rights so as to support an award of punitive damages.

47.     Dr. Chau is entitled by law to an award of his costs, including reasonable attorneys' fees, in prosecuting this action.

## COUNT IV
## VIOLATION OF CAL. LABOR CODE § 1102.5
## (Against All Defendants)

48.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

49.     Animo, Berardi, and the other Defendants were "employers" of Dr. Chau within meaning of Cal. Labor Code § 1102.5.

50.     Dr. Chau was an "employee" within meaning of Cal. Labor Code § 1102.5.

51.     Dr. Chau had reasonable cause to believe, and did believe, that Defendants acted in violation of federal law, as set forth above.

52.     Dr. Chau engaged in protected activity within meaning of Cal. Labor Code § 1102.5 by, *inter alia*, reported his concerns in this regard to Berardi, in Berardi's capacity as General Partner of the Fund and a person with authority to investigate and/or correct the legal violations of which Dr. Chau complained.

53.     Shortly after Dr. Chau's engaged in protected activity, Defendants retaliated against Dr. Chau and engaged in a series of adverse actions against Dr. Chau including, without limitation, by marginalizing Dr. Chau role with the Fund, reducing and eliminating Dr. Chau's authority, responsibilities, and access, and ultimately terminating Dr. Chau's employment.

54.     Dr. Chau's protected activity was the reason and motivation for Defendants' decisions to retaliate against Dr. Chau and take adverse actions against Dr. Chau.

55.     As a direct and proximate result of Defendants' wrongful termination of Dr. Chau's employment and the other retaliatory/adverse actions against Dr. Chau, Dr. Chau has suffered and continues to sustain substantial financial losses, including without limitation, earnings and other benefits, in an amount according to proof at trial.

56.     As a direct and proximate result of Defendants' wrongful termination of Dr. Chau's employment and the other retaliatory/adverse actions against Dr. Chau, Dr. Chau has suffered and continues to sustain humiliation, emotional distress and mental anguish in an amount according to proof at trial.

57.     Defendants' conduct was a substantial factor in causing Dr. Chau's harm.

58.     Defendants' conduct was undertaken fraudulently, maliciously, oppressively, and/or in reckless disregard of Dr. Chau's rights so as to support an award of punitive damages.

59.     Dr. Chau is entitled by law to an award of his costs, including reasonable attorneys' fees, in prosecuting this action.

**COUNT V**
**VIOLATIONS OF PUBLIC POLICY**
**(Against All Defendants)**

60.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

61.     California and Florida have fundamental and substantive public policies that prohibit an employer from retaliating and/or taking adverse action against an employee who reports violations of law committed by the employer.

62.     Animo, Berardi, and the other Defendants were "employers" of Dr. Chau within meaning of applicable Florida and California laws.

63.     Dr. Chau was an "employee" within meaning of applicable Florida and California laws.

64.     Dr. Chau had reasonable cause to believe, and did believe, that Defendants acted in violation of federal law, as set forth above.

65.     Dr. Chau engaged in protected activity within meaning of applicable Florida and California laws by, *inter alia*, reported his concerns in this regard to Berardi, in Berardi's capacity as General Partner of the Fund and a person with authority to investigate, discovery, and/or correct the legal violations of which Dr. Chau complained.

66.     Shortly after Dr. Chau's engaged in protected activity, Defendants retaliated against Dr. Chau and engaged in a series of adverse actions against Dr. Chau including, without limitation, by marginalizing Dr. Chau role with the Fund, reducing and eliminating Dr. Chau's authority, responsibilities, and access, and ultimately terminating Dr. Chau's employment.

67.     Dr. Chau's protected activity was the reason and motivation for Defendants' decisions to retaliate against Dr. Chau and take adverse actions against Dr. Chau.

68.     As a direct and proximate result of Defendants' wrongful termination of Dr. Chau's employment and the other retaliatory/adverse actions against Dr. Chau, Dr. Chau has suffered and continues to sustain substantial financial losses, including without limitation, earnings and other benefits, in an amount according to proof at trial.

69.     As a direct and proximate result of Defendants' wrongful termination of Dr. Chau's employment and the other retaliatory/adverse actions against Dr. Chau, Dr. Chau has suffered and continues to sustain humiliation, emotional distress and mental anguish in an amount according to proof at trial.

70.     Defendants' conduct was a substantial factor in causing Dr. Chau's harm.

71.     Defendants' conduct was undertaken fraudulently, maliciously, oppressively, and/or in reckless disregard of Dr. Chau's rights so as to support an award of punitive damages.

72.     Dr. Chau is entitled by law to an award of his costs, including reasonable attorneys' fees, in prosecuting this action.

## COUNT VI
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

73.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

{10640434: }

74.     As described above, Dr. Chau and the Fund entered into the Executive Agreement (attached hereto as **Exhibit 1**), the Management Agreement (attached hereto as **Exhibit 2**), and/or the Letter/Carry Agreement (attached hereto as **Exhibit 3**) (collectively, the "Agreements").

75.     The law implies in every contract a covenant of good faith and fair dealing.

76.     Dr. Chau fully performed his obligations under the Agreements, and/or his performance of such duties was excused.

77.     Defendants unfairly interfered with Dr. Chau's rights to receive the benefits of the Agreements by, among other things, prematurely terminating Dr. Chau's employment with Animo, thus preventing Dr. Chau from vesting additional equity over the two-year term of Dr. Chau's employment as set forth above, as well as by withholding Dr. Chau's stake in the Fund, management fees payable to the Fund, and his carry interest.

78.     Moreover, following Defendants' retaliation and adverse actions against Dr. Chau – without which Dr. Chau would still be employed by the Fund – Defendants purported to invoke a "Repurchase Option" in the Management Agreement, under which Animo sought to repurchase the entirety of Dr. Chau's equity stake in the Fund (including his vested interest) for the illusory and grossly-inadequate sum of $1.00 U.S., which Defendants never provided.

79.     Defendants set the closing for Animo's execution of the "Repurchase Option" to occur in Miami, during the height of the COVID-19 pandemic, knowing that Dr. Chau resided in Hawaii and would be unable to attend.

80.     Defendants' invocation of the "Repurchase Option" and the manner in which they effectuated the "Repurchase Option" were in bad faith and for the purpose of injuring Dr. Chau.

81.     Defendants' conduct violates the Agreements' implied covenants of good faith and fair dealing.

82.     Dr. Chau was harmed by Defendants' breaches of the implied covenant of good faith and fair dealing.

83.     Dr. Chau has been harmed in an amount to be proven at trial.

## COUNT VII
## UNJUST ENRICHMENT
## (Against All Defendants)

84.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

85.     Dr. Chau conferred material and valuable benefits on Defendants by way of his services performed and rendered for Defendants.

86.     Defendants are aware of those benefits and have accepted and retained them.

87.     The circumstances are such that it is unfair and inequitable for Defendants to retain those benefits without paying fair market value for them.

88.     Dr. Chau has been harmed in an amount to be proven at trial.

## COUNT VIII
## COMMON COUNT: GOODS AND SERVICES RENDERED
## (Against All Defendants)

89.     Dr. Chau realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

90.     Dr. Chau provided services to Defendants at Defendants' request.

91.     Dr. Chau performed the serves as requested.

92.     Defendants have not paid Dr. Chau the reasonable or agreed-upon value of those services.

93.     Dr. Chau has been harmed in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

i.      That judgment be entered for Dr. Chau and against Defendants on each of Dr. Chau's causes of action;

ii.      For an award of general damages and compensatory damages, including without limitation, damages for Dr. Chau's financial losses and damages for emotional distress, humiliation, and mental anguish, together with pre- and post-judgment interest and costs, in an amount according to proof;

iii.      For an award of punitive damages;

iv.      For an award of restitution;

v.      For an award of attorneys' fees and costs; and

vi.      For such other costs and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted:

MCDONALD HOPKINS LLC
*Attorneys for Plaintiff Dr. Tanguy Chau*

/s/ *Christopher B. Hopkins*
Christopher B. Hopkins, Esq.
Florida Bar No. 116122
chopkins@mcdonaldhopkins.com
501 S. Flagler Drive, Suite 200
West Palm Beach, FL 33401
Tel: (561) 472-2121
Fax: (561) 472-2122

Dated:  September 9, 2022